Gen. 53]                                                                                       53

CONSTITUTIONAL LAW – EQUAL PROTECTION – GENERAL
ASSEMBLY – "ONE PERSON/ONE VOTE" REQUIREMENT
DOES NOT APPLY TO COUNTY DELEGATIONS

November 21, 1995

*The Honorable Kumar P. Barve, Chairman*
*Montgomery County Delegation*
*House of Delegates*

You have requested our opinion whether the "one-person/one-vote" requirement of the Equal Protection Clause of the Fourteenth Amendment applies to county delegations in the General Assembly. Specifically, you have asked whether inclusion in the Montgomery County House delegation of two non-resident delegates now representing the equivalent of just one-twentieth of a Senate district in the County would unconstitutionally dilute the voting rights of the 22 resident delegates.

Our opinion is that county delegations are not subject to the "one-person/one-vote" requirement.[1]

**I**

**De Facto Power of County Delegations**

In your opinion request, you state that delegations do not act in an advisory role, but "exercise dispositive authority" on many types of legislation. You note that:

> As a technical legal matter, legislation is not referred to each delegation, but pursuant to the tradition of "local courtesy," standing committees will not act on legislation that is local in nature until the affected Delegation advises the standing committee as to the

_____

[1] With certain additional analysis, this opinion confirms conclusions reached in a November 14, 1994 letter of advice to Speaker of the House Casper R. Taylor, Jr.

position of that Delegation. Moreover, if the Delegation votes unfavorably on a piece of legislation, a standing committee will not bring it up for a vote even though the Rules of the House of Delegates require that each introduced bill have a hearing and a vote. Because standing committees defer to delegation decisions with respect to most jurisdiction-specific legislation absent statewide implications or contravention of a statewide policy, local courtesy becomes a de facto reality. The rubber stamp by a standing committee of a Delegation's affirmative action and the refusal of a standing committee to consider legislation which a Delegation has disapproved give the Delegations de facto legal authority even though the bills considered are not formally referred to delegations as select committees.

Judges, too, have observed the impact of local courtesy and the practical significance of voting in county delegations. *See, e.g., Porten Sullivan Corp. v. State*, 318 Md. 364, 408 n.6, 568 A.2d 1111 (1990). *See also Legislative Redistricting Cases*, 331 Md. 574, 621, 629 A.2d 646 (1993) (dissenting opinion); *Hughes v. Maryland Committee*, 241 Md. 471, 502-03, 217 A.2d 273 (1966) (dissenting opinion).[2]

However, the Supreme Court has said that its line of "one-person/one-vote" cases "does not attempt to inquire whether, in terms of how the legislature actually works in practice, the districts have equal power to affect a legislative outcome. This would be a difficult and ever changing task ...." *Board of Estimates v. Morris*,

---

[2] Of course, the advent of home rule in the majority of Maryland's counties has diminished the amount of local legislation considered by county delegations. *See Scull v. Montgomery Citizens*, 249 Md. 271, 274, 239 A.2d 92 (1968); Department of Legislative Reference, *Maryland Local Government Handbook* 52 (1986). Further, there have been instances where a standing committee has voted to disapprove single county legislation approved by a delegation. *See, e.g., State v. Prince Georgians for Glendening*, 329 Md. 68, 71 (1993), 617 A.2d 586 (rejection of Prince George's ethics bill by House Constitutional and Administrative Law Committee).

489 U.S. 688, 699 (1989).  Thus, if equal protection standards are to apply to voting in county delegations, that result would have to be premised on the *de jure* status of such units, the legal nature of their powers, and the manner in which delegations are formed.  In other words, for the "one-person/one-vote" requirement to govern delegation voting, "as a matter of law" voters must elect legislators to the county delegation and that delegation must "exercise," "share in," or "control" general governmental or legislative power "of significant impact."  489 U.S. at 694-96.  Tradition and practice do not invoke the requirement.

## II

### Legal Status of County Delegations

The Maryland Constitution makes little reference to committees of the General Assembly and none to county delegations.[3]  To the extent committees have general constitutional sanction, their status is grounded in Article III, §19, which requires "[e]ach House" of the General Assembly to "determine the rules of its own proceedings."  *Cf. Vander Jagt v. O'Neill,* 699 F.2d 1166, 1172-73 (D.C. Cir. 1983).  Statutory law is also silent on the establishment and operation of county delegations.

Since 1950, the Rules of the House of Delegates have deemed delegations to be select committees, and House Rule 19(a) provides as follows:

> As bills and resolutions are referred to a county delegation, or to the Baltimore City Delegation, that body shall be a select committee.  If the county delegation consists of one or two members only, the Speaker shall name the second and third members or a third

---

[3] Article III, §24 in essence requires the establishment of a Joint Standing Committee on Investigations.  Article III, §21 makes reference to open and closed meetings of the Committee of the Whole.  Article IV, §41D makes an apparent reference to open hearings of the Senate Executive Nominations Committee. Finally, Article XI, §7 authorizes the members of the General Assembly representing Baltimore City to approve certain City ordinances creating debt or extending credit.

> member from some other county or Baltimore
> City, making a select committee of three.[4]

Senate Rules are more veiled on the subject, stating only that "[t]here shall be select committees as designated by the President from time to time and entered in the Journal of the Senate," Senate Rule 19.[5] The rules of each chamber contain no other reference to the duties of a county delegation or how such a body is to be established. However, the 1995 House Rules contained the following provisions for voting by non-resident delegates in a county delegation:

> (1) Except as provided by paragraph (2) of this subsection, each delegate who represents any portion of a county has one vote in the county delegation in which the district lies.
>
> (2) After an opportunity for all delegates to be heard, a majority of delegation members present and voting may elect to allocate nonresident delegates less than one full vote. The vote may not be less than one-third of a vote.

---

[4] Unless otherwise indicated, all citations to the rules of either house are to the 1995 versions. The adoption for each of the last 45 sessions of Rule 19(a), which permits a nonapportioned select committee, *viz*. in cases of two member delegations, as well as the adoption of Rule 19A(b), discussed in text below, indicate the General Assembly's view that the "one-person/one-vote" requirement does not apply to county delegations. *See also* note 5 below.

[5] The Senate Journal, like the House Journal, contains no formal designation of County delegations as select committees. However, as a matter of custom, there are 11 delegation/select committees in the Senate. Five of these consist of legislators from more than one county and Select Committee No. 10 (Eastern Shore) seats legislators from nine counties. On the House side, there appears to be a delegation for each of the 24 subdivisions. Some of the House delegations operate on a joint basis with their Senate counterparts.

Some further explanation appears in *Mason's Manual of Legislative Procedure*, which the rules incorporate for general guidance to the extent that its guidelines "are applicable and do not conflict with the Rules." *See* House Rule 117 and Senate Rule 117. *Mason's Manual* provides that "[i]n the absence of any controlling provision, committees may be selected in any manner the body may determine." §600.1.[6] And *Mason's Manual* goes on to state in §615 that:

> 1.  The method of performing a part of the work of a deliberative body through committees is not forbidden and has been sanctioned by judicial decisions.
>
> 2.  A legislative body cannot delegate its powers to a committee, but when it ratifies the act of a committee in due form the act of the committee becomes the act of the body.
>
> 3.  Committees are instruments or agencies of the body appointing them, and their function is to carry out the will of that body.
>
> 4.  The functions of a legislative committee are purely advisory. All its acts are subject to review by the body and may be approved or rejected. Committee acts are recommendations only and except as especially authorized have no force until approved by the body.[7]

---

[6] This and other references to *Mason's Manual* are to the 1989 edition, issued by the American Society of Legislative Clerks and Secretaries and the National Conference of State Legislatures.

[7] This characterization of the work of legislative committees finds support in other authorities. Although certain conduct in committees constitutes a "legislative act" for purposes of Speech and Debate immunity, *see Gravel v. U.S.*, 408 U.S. 606, 624 (1972), the cases appear to agree that a committee does not exercise "legislative power." *See Montgomery v. Ellis*, 364 F. Supp. 517, 532 (N.D.Ala. 1973) ("Congressional Committees cannot exercise legislative powers, which are vested by the Constitution only in the Congress itself..."); *Michel v*

After the legislative session ends, county delegations lose even this degree of formal recognition, because the rules recognizing them as select committees of the General Assembly expire at the end of the session at which they were adopted. *See Mason's Manual* at §21.4. *See also Marshall v. Harwood,* 7 Md. 466, 482 (1855) ("Committees have no power to act as such during the recess of the Legislature unless they are authorized specifically to do so."). *Cf.* §2-1102 of the State Government Article (continuing the existence of each standing committee beyond the session but omitting reference to the status of select committees).[8]

## III

### Analysis

On the basis of the legal status of county delegations, we conclude that a Maryland court would not extend the "one-person/one-vote" requirement to such bodies. First, voters do not "elect" members of county delegations. They elect members of the General Assembly from districts that at times are permitted to cross county lines. *See Legislative Redistricting Cases*, 331 Md. 574, 629 A.2d 646 (1993). The composition of delegations is controlled by members of the body itself. Article III, §19 of the Constitution; *Mason's Manual* at §600.1. *See also Sailors v. Board of Education*, 387 U.S. 105 (1967) (members of school board chosen by elected officials are appointed not elected by voters); *Cunningham v. Municipality of Metropolitan Seattle,* 751 F. Supp. 885, 893 (W.D. Wash. 1990). *Cf. Presley v. Etowah County Commission*, 112 S.Ct. 820, 829 (1992) (changes in body's internal operating procedures,

---

*Anderson*, 817 F. Supp. 126, 140 (D.D.C. 1993), *aff'd* 14 F.3d 623 (D.C. Cir. 1994) ("[N]ot all votes cast as part of the congressional process constitute exercises of legislative power. For example ... representatives of the territorial entities have ... been given the authority to sit on and vote in standing and select committees of the House of Representatives...."). *Cf. INS v. Chadha*, 462 U.S. 919, 952-58 (1983) (declaring legislative vetoes occurring outside the law-making process to be unconstitutional).

[8] Because of the absence of formal legal authority for their existence beyond the session, the Attorney General's Office has long advised that during the recess a county delegation is not a "public body" subject to the Open Meetings Act. *See* letter of advice to Delegate Rosa Lee Blumenthal (March 17, 1993).

such as subcommittee assignments, do not implicate the federal Voting Rights Act).

Second, legislators elected from all or part of a county do not "as a matter of law" become members of a county delegation. *Board of Estimates of City of New York v. Morris*, 489 U.S. at 694. There is no legal requirement that delegations exist and no statute or rule that mandates how they are to be established and what their powers and duties are to be.

Third, delegations exercise no independent authority – that is, no power not derived from the General Assembly itself. *See Mason's Manual* at §615.3. *Cf. First Continental v. Director*, 229 Md. 293, 305, 183 A.2d 347 (1962) (no part of the sovereign power characteristic of public office exists where the incumbent exercises no power not derived from higher body). And, as a matter of law, the functions of a delegation are not intended to be, and cannot be, the exercise of legislative power. *See* Part II above.

Furthermore, in our view, the application of the "one-person/one-vote" requirement to county delegations is not mandated by the decision of the Supreme Court in *Board of Estimates v. Morris*. There, by operation of law, officials, upon their election, became members of a New York City municipal board that exercised significant executive and legislative powers, set forth in charter and statute. By law, the board members had the final word on many important issues. *Morris* did not involve a subunit of an elected body, chosen by the body, that as a matter of law cannot exercise final legislative power.

Nor do we find controlling the unreported decision of a United States District Court in *Linden v. Campbell,* Civ. Action No. 2:91-3635-1 (D.S.C.) (temporary restraining order granted February 20, 1994, preliminary injunction granted March 8, 1994). In this case, which is still awaiting trial, a federal judge preliminarily enjoined a nonapportioned county legislative delegation from filling a school board vacancy that state law authorized the delegation to fill. *But see Moore v. Wilson*, 372 S.E.2d 357 (S.C. 1988) (upholding the constitutionality of delegation appointments). The linchpin of the court's holding is that by making the appointment pursuant to statute, the delegation was exercising "the powers of governance." The decision in no way suggests that the legislative acts of the delegation trigger "one-person/one-vote" scrutiny.

More persuasive, we believe, are decisions of three federal appeals courts rejecting "one-person/one-vote" attacks on the composition of legislative committees.[9] In *Davids v. Akers*, 549 F.2d 120 (9th Cir. 1977), a federal panel rejected an equal protection challenge by Democratic members of the Arizona House of Representatives, who claimed malapportionment of the body's standing committees. In so doing, the court noted that:

> [The challengers] are now participants in a legislative process, the rules of which are adopted in the usual way by majority vote of their House. Nonapportionment to committees deprives some of them of one form of participation in the work of the House. But they can still appear before committees; they can still know what committees are doing; they can still speak on the floor and elsewhere; they can still try to persuade their colleagues to vote for measures that they favor; they can still work with their fellow partisans, in and out of office, to get particular bills passed....

549 F.2d at 127.[10] In reliance upon *Davids*, the District of Columbia Circuit in *Vander Jagt v O'Neill,* 699 F.2d 1166 (D.C.Cir.), *cert. denied*, 464 U.S. 823 (1983), dismissed a similar challenge by Congressional Republicans regarding the composition of committees. Finally, in *Michel v. Anderson,* 14 F.3d 623 (D.C.Cir. 1994), a federal appellate court rejected a claim by congressmen that their votes had been "diluted" by allowing territorial delegates to vote in the Committee of the Whole, largely on the basis of the

---

[9] These cases also reveal the many procedural hurdles – from lack of standing to Speech and Debate immunity – that are likely to be asserted in defense of a lawsuit challenging committee composition.

[10] *Davids* also suggested that the Tenth Amendment to the U.S. Constitution might afford some protection to a state legislature in the adoption of rules governing the appointment of committees. 549 F.2d at 127. One commentator has indicated that *Davids* could have reached the same result on the basis of the Guarantee Clause of the Constitution, Art. IV, §4. *See* Merritt, *The Guarantee Clause and State Autonomy: Federalism for a Third Century,* 88 Colum. L. Rev. 1, 43 (1988).

permissibility of the longstanding practice of allowing such delegates to vote on standing committees.  14 F.3d at 629-32.[11]

## IV

## Conclusion

On the basis of these authorities and in light of the particular characteristics of a county delegation, we believe a Maryland court would conclude that the "one-person/one-vote" requirement does not apply to county delegations, whether or not sitting as select committees.

> J. Joseph Curran, Jr.
> *Attorney General*
>
> Robert A. Zarnoch
> *Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*

---

[11] Outside the "one-person/one-vote" context and in dicta, the court in *Michel* noted that the House could not "deprive any *member* of the right to vote in the Committee of the Whole (or in a standing committee)."  14 F.3d at 630. *But see Gewertz v. Jackman*, 467 F.Supp. 1047 (D.N.J. 1979) (denying preliminary injunction to restore seat to state legislator removed from appropriations committee).  We express no view on this question.